IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35497-1-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 35620-5-III) |
| v. | ) | |
| | ) | |
| BENJAMIN ALEXANDER HANKINS, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| BENJAMIN A. HANKINS, | ) | |
| | ) | |
| Petitioner. | ) | |

KORSMO, J. — By appeal and personal restraint petition (PRP), Benjamin Hankins

challenges his conviction for second degree trafficking in stolen property. We affirm the

conviction, remand for the court to review the legal financial obligations (LFOs), and

dismiss the PRP.

No. 35497-1-III (Consolidated with 35620-5-III)
*State v. Hankins*; *In re PRP of Hankins*

FACTS

Mr. Hankins was charged in the Stevens County Superior Court with one count of first degree trafficking in stolen property on October 8, 2016. The charge arose after one of seven Sea-Doo watercraft belonging to Ronald Reynolds was stolen from the yard of his Spokane residence. Seeing the stolen machine listed for sale online three days later, Reynolds made an appointment to meet the seller. Police arrived with Reynolds and arrested Hankins when he showed up with the stolen watercraft.

The matter proceeded to jury trial. When Reynolds reported the stolen watercraft to Spokane police, he also reported the machine's registration number. The machine recovered from Hankins did not have a registration number, but Reynolds identified it as the machine taken from his yard. He also testified that the machine model was a Sea-Doo Bombardier. However, pictures of the machine's motor compartment contain the words Yamaha and Bombardier. The charging document identified the stolen property as a "1990 Yamaha Bombardier" jet ski. Clerk's Papers (CP) at 1.

Mr. Hankins testified in his own defense that he had bought the watercraft in Spokane from a man named Brown for $250; the machine had not had any registration number on it when he purchased it. The court instructed the jury on both first and second degree trafficking in stolen property. In each instance, the instruction required the jury to find that Hankins had trafficked in "stolen property" without describing the property.

2

The jury convicted Mr. Hankins of trafficking in stolen property in the second degree. At sentencing, both counsel agreed that Mr. Hankins had three prior adult felony convictions, including one from Oregon, that resulted in an offender score of three. Report of Proceedings (RP) at 353. No comparability analysis was conducted for the Oregon offense. The court imposed a standard range sentence using three for the offender score. Although counsel was appointed to represent him in the trial court, Mr. Hankins did not assert at sentencing that he was indigent and told the trial judge that he had a "very successful business." RP at 372, 376. The court imposed $1,100 worth of LFOs, including discretionary costs for appointed counsel and a booking fee. CP at 162-163.

Mr. Hankins timely appealed to this court. Notwithstanding his statement, he sought, and received, appointed counsel to represent him on appeal. He subsequently filed a CrR 7.8 motion for a new trial based on newly discovered evidence. The trial court transferred the case to this court for consideration as a PRP. We accepted the transfer and consolidated the PRP with the direct appeal. His appellate counsel was appointed to file a reply brief in the PRP. A panel then considered the case without hearing argument.

## ANALYSIS

The appeal and the PRP raise issues that focus on the evidence. We consider first a challenge to the sufficiency of the evidence to support the jury's verdict, before turning to a claim that the elements instruction was improper. We then consider whether counsel

3

rendered ineffective assistance and whether newly discovered evidence justifies a new trial. Finally, we consider a request for relief from LFOs and appellate costs.

*Evidentiary Sufficiency*

Mr. Hankins argues on appeal that the evidence did not support the jury's verdict because the State did not prove that he trafficked in a stolen 1990 Yamaha Bombardier. It did not have to do so. The evidence supports the jury's verdict.

Well settled standards govern our review of this issue. Evidence is sufficient to support a verdict if the jury has a factual basis for finding each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). The evidence is viewed in the light most favorable to the prosecution. *Green*, 94 Wn.2d at 221. Appellate courts defer to the trier-of-fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). Under *Jackson*, the question is *could* the trier of fact find the element(s) proved?

The short answer to Mr. Hankins' argument is that the jury convicted him of recklessly trafficking in *stolen property*. RCW 9A.82.055. It was not asked, and was not required, to find that he trafficked in a specific piece of stolen property. Since Mr. Reynolds identified the watercraft that Mr. Hankins tried to sell as the property stolen

from Reynolds in Spokane, the evidence supported the jury's verdict. The evidence was sufficient.

*Elements Instruction*

Mr. Hankins also presents, as an alternative argument, the converse claim that the elements instruction should have reflected the specific piece of property alleged in the charging document. He cites no relevant authority for the proposition that each fact in a charging document must be incorporated into the elements instruction.

To make his argument, Mr. Hankins combines two disparate legal principles. The first is the law of the case doctrine as applied to jury instructions. In Washington, surplus allegations only become an additional element of the case when they are included in the jury's instructions. *State v. Hickman*, 135 Wn.2d 97, 102-103, 954 P.2d 900 (1998). Thus, if the State undertakes to prove a specific fact by way of the elements instruction, the evidence must support that factual determination even if the fact is not an element of the offense. *Id*. at 101-105. This is a specific application of the law of the case doctrine. *Id*. at 102.

The second principle involves the notification function of a charging document. The purpose of a charging document is to provide notice to the defendant of the charge against him and its factual basis. *State v. Pelkey*, 109 Wn.2d 484, 491, 745 P.2d 854 (1987). The charging document is not a concern for the jury. Its primary purpose is to alert the defendant to the charge and underlying conduct at issue. *Id*. From the jury's

5

perspective, the case is contained in the elements instruction and any accompanying definitional instructions. *State v. Smith*, 131 Wn.2d 258, 262-263, 930 P.2d 917 (1997).

"Jury instructions and charging documents serve different functions." *State v. Vangerpen*, 125 Wn.2d 782, 788, 888 P.2d 1177 (1995). This observation is dispositive of Mr. Hankins' alternative argument. Instead of arguing that the charging document misled him about the actions that constituted the crime with which he was charged, Mr. Hankins argues that those factual allegations needed to be included in the charging document lest he be convicted of a crime other than that with which he was charged. That is a concern of an elements instruction only in very limited circumstances.

The elements of the second degree trafficking in stolen property charge were that Mr. Hankins, on October 8, 2016, recklessly trafficked in stolen property. CP at 117. These elements reflected those required by the statute and the date of the offense identified in the charging document. CP at 1. The evidence adduced at trial showed only one instance of Mr. Hankins attempting to sell stolen property—the watercraft he brought to sell to Mr. Reynolds. There was no evidence that Mr. Hankins had sold other watercraft or any other type of stolen property on that date.

This is a far cry from the case he relies on, *State v. Jain*, 151 Wn. App. 117, 210 P.3d 1061 (2009). There the defendant had been charged with two counts of money

6

laundering involving the transfer of two specific pieces of real estate, but the evidence at trial established that he transferred seven different properties that same day. *Id*. at 120-121, 123. Because there were seven possible money laundering offenses, although only two were charged, the defendant's right to unanimous jury verdicts was infringed by the failure to require either a unanimity instruction or to elect which property transfers the prosecutor was relying on. *Id*. at 124. The *Jain* court, however, expressly rejected the argument made here by Mr. Hankins: "There simply is no requirement for the 'to convict' instructions to contain a statement of the type of specified unlawful activity underlying the charge of money laundering." *Id*. at 128-129.[1]

This case, of course, is not *Jain*. There was no evidence indicating multiple incidences of trafficking in stolen property by Mr. Hankins on October 8, 2016. The prosecutor was not required to identify (by elements instruction, unanimity instruction, or election during closing argument) which instance of trafficking in stolen property he was relying on.

The elements instruction was correct.

---

[1] The other case relied on by Mr. Hankins is of a similar nature. *State v. Brown*, 45 Wn. App. 571, 726 P.2d 60 (1986). There the charging document had identified the 12 specific people with whom the defendant was alleged to have conspired, but the evidence at trial involved additional conspirators and the jury instructions did not specify with whom the defendant conspired. *Id*. at 576. In those circumstances, the defendant may have been convicted of a crime other than that with which he was charged. *Id*.

*Ineffective Assistance of Counsel*

Mr. Hankins next contends that his trial counsel performed ineffectively by failing to challenge the comparability of the prior Oregon conviction.[2] He cannot establish error by his counsel, nor prejudice.

Well known standards also govern review of this claim. The Sixth Amendment to the United States Constitution guarantees the effective assistance of counsel. Counsel's failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

---

[2] The reply brief in the PRP also asserts a claim of ineffective assistance for failure to discover the evidence underlying the new trial claim. We do not consider this claim separately for two reasons. First, the issue was improperly raised in a reply brief; there was no authorization to file an amended PRP raising new claims. Counsel was appointed only to respond to the State's answer to the petition. *See* Order of October 8, 2016. Second, the merits of the newly discovered evidence claim were properly raised in the PRP and are before this court. A claim of ineffective assistance is useless in this context. If the claim of newly discovered evidence was without merit, then any possible attorney error could not have been prejudicial. If the claim had merit, then the attorney error would be redundant.

Under *Strickland*, courts apply a two-prong test, evaluating whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id*. at 690-692. When a claim can be disposed of on one ground, a reviewing court need not consider both *Strickland* prongs. *Id*. at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). If the evidence necessary to resolve the ineffective assistance argument is not in the record, the claim is not manifest and cannot be addressed on appeal. *McFarland*, 127 Wn.2d at 334.[3]

Here, nothing in the record indicates that counsel erred by agreeing that the prior Oregon conviction counted in the offender score. From the prosecutor's discussion of the facts of that incident, it appears that information about the Oregon conviction was available to the parties at sentencing, although none of those materials made it into the record due to the stipulation of the defense that the prior conviction did count. He likewise has made no effort to present that information via his PRP, nor has he presented the Oregon statute to us and made any argument that it was legally not comparable to Washington law.[4]

---

[3] Typically, the remedy in such situations is for the defendant to bring a PRP so that additional evidence can be added to the record. *Id*. at 338 n.5; *State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

[4] Given that nearly all jurisdictions have adopted some form of the Uniform Controlled Substances Act, Washington drug offenses typically are comparable to those in most other states.

In short, Mr. Hankins has failed to demonstrate that his counsel erred.[5] The

ineffective assistance claim is without merit.

*Newly Discovered Evidence*

The PRP raises a claim of newly discovered evidence, largely concentrating on the

vehicle identification number reported to Spokane police when the watercraft was stolen.

This claim fails for numerous reasons.

A criminal defendant seeking a new trial must satisfy a five-part test. In order to

prevail, the claimant must establish the critical importance of the newly discovered

evidence to the trial.

> A new trial will not be granted on that ground unless the moving party
> demonstrates that the evidence (1) will probably change the result of the
> trial; (2) was discovered since the trial; (3) could not have been discovered
> before trial by the exercise of due diligence; (4) is material; and (5) is not
> merely cumulative or impeaching.

*State v. Williams*, 96 Wn.2d 215, 222-223, 634 P.2d 868 (1981). "The absence of any

one of the five factors is grounds for the denial of a new trial." *Id*. at 223. Although it

appears that the newly discovered evidence fails to establish most of these five factors,

we address only the final factor.

---

[5] There also was no reason to pick an unnecessary fight at a time counsel was trying to convince the judge that leniency and home detention were appropriate. Since Mr. Hankins had recently been before the same judge for felony sentencing in another case, it also is likely that the offender score had been addressed on that occasion.

The evidence presented is information that suggests that the identification number reported to Spokane police was incorrect and that the report (and subsequently the charging document) erroneously identified the watercraft as a "Yamaha Bombardier."[6] These errors may have provided a basis for further impeaching Mr. Reynolds, but they accomplish no more than that. For instance, the fact that an incorrect identification number was reported to the Spokane Police Department suggests that Reynolds was not a good reporter of information, but it does not establish that the watercraft Hankins attempted to sell (which had no identification number at all) was not the stolen watercraft belonging to Reynolds. This evidence, as well as the other proffered evidence, was of the same character—it called into question some aspects of the original theft report, but it does not suggest anything more than that. It does not establish that the watercraft belonged to someone other than Reynolds.

The other claims of the PRP—that this evidence established fraud and that the original count was "overcharged,"—are equally without merit and do not need significant discussion. The petition does not attempt to establish the elements of fraud, nor does the petition explain how the original charge of first degree trafficking somehow effects the conviction for second degree trafficking.

---

[6] Bombardier is a company, like Yamaha, that manufactures many personal travel devices, including watercraft. Sea-doo is the name of Bombardier's watercraft division.

The PRP simply has failed to establish any prejudicial error and is without merit.

*Legal Financial Obligations*

Lastly, we address appellant's claim that the trial court imposed LFOs without conducting an adequate inquiry into his ability to pay. Although it appears that the defense understandably avoided the topic of LFOs in order to convince the court that Mr. Hankins could afford the costs of home detention, intervening case law requires that we reverse the financial aspects of this sentence. *See State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

*Ramirez*, released after the sentencing in this case, requires that the trial court conduct a specified inquiry into the defendant's ability to pay discretionary costs. As Mr. Hankins received appointed counsel for trial due to apparent indigency, the trial court needed to engage in the *Ramirez* inquiry at sentencing despite any reservations Mr. Hankins may have had about raising the topic.

We reverse the LFOs and remand for the trial court to consider Mr. Hankins' financial situation. Any claim for costs on appeal will be heard by our commissioner in light of RAP 14.2 and our new general order of February 19, 2019.

Affirmed and remanded. The PRP is dismissed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Korsmo, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Siddoway, J.